Priority  ✓
Send  ✓
Enter  ___
Closed  ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

FILED
CLERK, U.S. DISTRICT COURT

JAN 2 5 2008

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MANUEL FLORES, aka MANUEL
GUTIERREZ FLORES,

               Petitioner,

vs.

RODERICK HICKMAN, et al.,

               Respondents.

) Case No. CV 06-4299-RSWL(RC)
)
)
)
)
) ORDER ADOPTING AMENDED REPORT AND
) RECOMMENDATION OF UNITED STATES
) MAGISTRATE JUDGE
)
)
)
)
)

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Amended Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a de novo determination.

IT IS ORDERED that (1) the Amended Report and Recommendation is approved and adopted; (2) the Amended Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition and dismissing the action with prejudice.

1    IT IS FURTHER ORDERED that the Clerk shall serve copies of this

2  Order, the Magistrate Judge's Amended Report and Recommendation and

3  Judgment by the United States mail on the parties.

4

5  DATED:   Jan 25, 2008

6                                         RONALD S.W. LEW

7                                  _____
                                       RONALD S.W. LEW
                                 SENIOR UNITED STATES DISTRICT JUDGE

8

9  R&R\06-4299.ado

10 1/10/08

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

```
                              FILED
             CLERK, U.S. DISTRICT COURT

                    JAN 11 2008

             CENTRAL DISTRICT OF CALIFORNIA
             BY                        DEPUTY
```

7

8

9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

10

11

12

13

14

15

| | |
|---|---|
| MANUEL FLORES, aka MANUEL GUTIERREZ FLORES, | ) Case No. CV 06-4299-RSWL(RC) |
| Petitioner, | ) |
| vs. | ) AMENDED REPORT AND RECOMMENDATION |
| RODERICK HICKMAN, et al., | ) OF A UNITED STATES MAGISTRATE JUDGE |
| Respondents. | ) |

16

17       This Amended Report and Recommendation[1] is submitted to the

18   Honorable Ronald S.W. Lew, Senior United States District Judge, by

19   Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28

20   U.S.C. § 636 and General Order 05-07 of the United States District

21   Court for the Central District of California.

22

23                              **BACKGROUND**

24                                  I

25       On November 17, 2003, in Los Angeles County Superior Court case

26

27   _____

     [1]   The amendment to the Report and Recommendation is solely

28   to correct a clerical error on page 18 of the initial Report and
     Recommendation.

no. BA249759, a jury convicted petitioner Manuel Flores, aka Manuel
Gutierrez Flores, of one count of possession of a controlled substance
in violation of California Health and Safety Code ("H.S.C.") §
11350(a) (count 4); however, the jury could not reach a unanimous
verdict on the other charges against petitioner for attempted murder
in violation of California Penal Code ("P.C.") §§ 664/187(a) (count
1), assault with a firearm in violation of P.C. § 245(a)(2) (count 2),
carrying a loaded firearm in violation of P.C. § 12031(a)(2)(f) (count
3), and destroying evidence in violation of P.C. § 135 (count 5), and
the trial court declared a mistrial as to those counts.  Clerk's
Transcript ("CT") 45-48, 164-68.  On February 27, 2004, after a second
trial, a jury convicted petitioner of counts 2 and 3, and as to count
2, the jury found petitioner personally inflicted great bodily injury
upon Tameka Jackson within the meaning of P.C. § 12022.7(a) and
petitioner personally used a firearm within the meaning of P.C. §
12022.5(a); however, once again, the jury could not reach a verdict on
count 1.[2]  CT 278-84.

On March 11, 2004, petitioner was sentenced on count 2 to the
upper term of 4 years, plus 3 years under P.C. § 12022.7(a) and 10
years under P.C. § 12022.5(a), and on counts 3 and 4 to the upper term
of 3 years on each count, to run concurrently, for the total term of
17 years in state prison.  CT 285-89.  In addition, the court ordered
petitioner to make restitution to Tameka Jackson under P.C. §
1202.4(f) in the amount of $10,000.00.  CT 286.

//

--------

[2]  The prosecution dismissed count 5.  CT 202.

1    The petitioner appealed his convictions and sentence to the

2    California Court of Appeal, which affirmed the judgment in an

3    unpublished opinion filed June 8, 2005.  Lodgments B-D.  The

4    petitioner then filed a petition for review in the California Supreme

5    Court, which, on August 17, 2005, denied review "without prejudice to

6    any relief to which [petitioner] might be entitled upon the finality

7    of People v. Black (2005) 35 Cal. 4th 1238 regarding the effect of

8    Blakely v. Washington (2004) 542 U.S. [296], 124 S. Ct. 2531, [159

9    L. Ed. 2d 403] and United States v. Booker (2005) 543 U.S. [220], 125

10   S. Ct. 738, [160 L. Ed. 2d 621] on California law."  Lodgments E-F.

11

12                                    II

13    The California Court of Appeal, in affirming petitioner's

14   convictions and sentence, made the following underlying factual

15   findings:[3]  Sometime after 6:00 a.m. on June 16, 2003, in Los Angeles,

16   petitioner and a friend of Tameka Jackson's were fighting.  The

17   petitioner jumped at Jackson as if he were going to hit her, and

18   another friend intervened.  The parties subsequently dispersed.

19

20    Later, petitioner rode a bicycle to Jackson's location, pulled a

21   gun from his waistband, and shot her in the face.  About that time,

22   Los Angeles Police Officer Joe Galindo was at the Greyhound Bus

23   terminal in downtown Los Angeles when he heard a shot, looked in the

24   direction of the sound, and saw several people pointing toward

25   petitioner and indicating he had just shot someone.  The petitioner

26   was wearing a Pendleton jacket.

27   _____

28         [3]   See Lodgment D at 2-3.

                                    3

1    Galindo saw petitioner put a gun in his waistband, and Galindo

2    pursued him.  A man in a blue van drove Galindo during part of the

3    pursuit.  A man carrying a pipe in his hand, and a woman, also chased

4    petitioner.  The man carrying the pipe later told Galindo that

5    petitioner was next to a trailer, and Galindo saw petitioner, still

6    wearing the jacket, crouched behind a trailer.  Galindo told

7    petitioner to come out with his hands up, but petitioner fled into a

8    warehouse and escaped.  The warehouse was about two and a half blocks

9    from the bus terminal.

10

11    About 6:00 a.m. on the above date, Jaime Pena was working at the

12    warehouse when petitioner, wearing the Pendleton jacket, entered and

13    asked if there were an exit in the back.  Pena and others told

14    petitioner to leave.  Petitioner went upstairs, returned, and put on

15    Pena's nearby jacket.  The Pendleton jacket was later found in the

16    warehouse.

17

18    About 6:00 a.m. on the above date, Melvin Carter called 911 from

19    a telephone on Seventh Street and said that a young Mexican male had

20    just shot a Black girl between Mills and Alameda "in front of the

21    Greyhound."  The dispatcher asked what the shooter was wearing, and

22    Carter stated "[a] white -- a . . . with a shirt with a stripes and

23    black pants.  He was riding a bike, but we . . . got the bike."

24    Carter also said the shooter ran between trucks, and that Galindo was

25    following in a turquoise van.  Carter helped direct emergency vehicles

26    to the scene.

27

28    On June 19, 2003, petitioner was in a tent near Santa Fe and

4

1  Fourth Street.   The petitioner left and began riding a bicycle.

2  However, when petitioner saw police officers, he fled on foot,

3  discarded cocaine base, and was arrested.

4

5                               **III**

6      On July 7, 2006, petitioner, proceeding pro se, filed the pending

7  petition for writ of habeas corpus under 28 U.S.C. § 2254, and on

8  August 30, 2006, respondent filed an answer.  On September 15, 2006,

9  petitioner filed a reply or traverse.

10

11     The petitioner raises the following claims in his habeas corpus

12  petition:

13     Ground One – "The imposition of an upper term sentence violated

14  *Blakely v. Washington* and U.S. Constitution 6th Amend. (Right to jury)

15  and 14th Amend. (Due Process)."  (Petition at 6).[4]

16     Ground Two – The trial court's "[e]rroneous admission of hearsay

17  testimony violated the confrontation clause of the 6th Amend. to the

18  _____

19      [4]  On May 9, 2007, this Court issued an Order to Show Cause
    "why this Court should not find Ground One to be unexhausted" due
20  to petitioner's failure to raise Ground One in the California
    courts post-Cunningham v. California, __ U.S. __, 127 S. Ct. 856,
21  166 L. Ed. 2d 856 (2007), "an intervening change in the law that
    overruled the California Supreme Court's decision in [People v.
22  Black, 35 Cal. 4th 1238, 29 Cal. Rptr. 3d 740 (2005)]," and
    appointed counsel for petitioner "for the limited purpose of
23  responding to this Court's Orders to Show Cause and to appeal, if
    necessary, the rulings on those Orders."  Flores v. Hickman, 489
24  F. Supp. 2d 1097, 1100 (C.D. Cal. 2007).  On May 24, 2007,
    respondent filed a response to the Order to Show Cause, and
25  petitioner filed his response on September 6, 2007.  Since both
    parties believe it would be futile for petitioner to attempt to
26  further exhaust Ground One in the state courts, this Court will
    not order such exhaustion, and the Order to Show Cause is deemed
27  discharged.

28

1  U.S. Constitution."  (Id.)

2      Ground Three - "Restitution Fine violates the Due Process Clause

3  of the 14th Amend. of the U.S. Constitution."  (Petition at 7).

4

5                          **DISCUSSION**

6                              **IV**

7      The Antiterrorism and Effective Death Penalty Act of 1996

8  ("AEDPA") "circumscribes a federal habeas court's review of a state

9  court decision."  Lockyer v. Andrade, 538 U.S. 63, 70, 123 S. Ct.

10  1166, 1172, 155 L. Ed. 2d 144 (2003); Wiggins v. Smith, 539 U.S. 510,

11  520, 123 S. Ct. 2527, 2534, 156 L. Ed. 2d 471 (2003).  As amended by

12  AEDPA, 28 U.S.C. § 2254(d) provides:

13

14      An application for a writ of habeas corpus on behalf of a

15      person in custody pursuant to the judgment of a State court

16      shall not be granted with respect to any claim that was

17      adjudicated on the merits in State court proceedings unless

18      the adjudication of the claim- [¶] (1) resulted in a

19      decision that was contrary to, or involved an unreasonable

20      application of, clearly established Federal law, as

21      determined by the Supreme Court of the United States; or [¶]

22      (2) resulted in a decision that was based on an unreasonable

23      determination of the facts in light of the evidence

24      presented in the State court proceeding.

25

26  28 U.S.C. § 2254(d).  Further, under AEDPA, a federal court shall

27  presume a state court's determination of factual issues is correct,

28  and petitioner has the burden of rebutting this presumption by clear

                              6

1  and convincing evidence.   28 U.S.C. § 2254(e)(1).

2

3       The California Supreme Court reached the merits of petitioner's

4  claims when it denied his petition for review without comment or

5  citation to authority.  Gaston v. Palmer, 417 F.3d 1030, 1038 (9th

6  Cir. 2005), amended by, 447 F.3d 1165 (9th Cir. 2006), cert. denied,

7  127 S. Ct. 979 (2007); Hunter v. Aispuro, 982 F.2d 344, 348 (9th Cir.

8  1992), cert. denied, 510 U.S. 887 (1993).   "Where there has been one

9  reasoned judgment rejecting a federal claim, later unexplained orders

10 upholding that judgment or rejecting the same claim rest upon the same

11 ground."  Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590,

12 2594, 115 L. Ed. 2d 706 (1991); Medley v. Runnels, 506 F.3d 857, 862

13 (9th Cir. 2007) (en banc).   Thus, in addressing petitioner's claims,

14 this Court will consider the reasoning of the California Court of

15 Appeal, which issued a written decision addressing them.   Parle v.

16 Runnels, 505 F.3d 922, 926 (9th Cir. 2007); Edwards v. Lamarque, 475

17 F.3d 1121, 1126 (9th Cir. 2007) (en banc), cert. denied, 128 S. Ct.

18 532 (2007).

19

20                                    V

21       In Ground One, petitioner claims the trial court violated Blakely

22 v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403

23 (2004), and petitioner's Sixth and Fourteenth Amendment rights to a

24 jury trial and due process of law "by imposing an upper term based on

25 its own findings of aggravating facts. . . ."   Petition at 6,

26 Attachment at 6-9.  The petitioner contends that since "the middle is

27 the presumptive sentence under California's Determinate Sentencing Law

28 [DSL] and a defendant may only receive an upper term if 'aggravating

1  circumstances' are found, the California sentencing scheme for
2  judicial determination of those facts under a preponderance standard
3  suffers from the same constitutional defects as the Washington regime
4  reviewed in *Blakely*."  Petition, Attachment at 8.

5

6      The California Court of Appeal made the following factual
7  findings underlying this claim:

8

9      The preconviction probation report prepared for a September
10     2003 hearing reflects that on May 20, 2003, [petitioner] was
11     convicted of concealing a firearm on his person (Pen. Code,
12     § 12025, subd. (a)(2)).  At sentencing in the present case,
13     the court observed that [petitioner] had a "propensity for
14     guns[]" and recently had been convicted of possession of a
15     concealed firearm.  [Petitioner's] counsel indicated he was
16     aware of the prior conviction but "wasn't going to bring it
17     up."  The court stated [petitioner] was "on probation for
18     that[,]" and [petitioner] acknowledged that that was true.
19     [Petitioner] indicated he thought the prosecutor was going
20     to mention the prior conviction but the prosecutor did not
21     do so.  The court later said, "Well, it's so glaring, it
22     need not even be mentioned so in passing." (*Sic.*)  [¶]  The
23     court commented that [petitioner] should have been convicted
24     of attempted murder in the present case, and his assault on
25     Jackson was inexplicable and vicious.  The court stated
26     "it's just mind boggling to me that he would do such a thing
27     especially understanding fully that he was under a
28     proscription as far as possessing firearms is concerned.  **He**

1   was on probation for that same offense." The court noted

2   [petitioner] apparently posed a significant danger to

3   society, apparently had an affinity for guns and violence,

4   and was ready to commit whatever callous or vicious act came

5   to his mind.  The court also noted Jackson was completely

6   defenseless and [petitioner] chose to shoot her in the face.

7   [¶]   The court found as aggravating factors that **the crime**

8   **involved great violence, great bodily harm, a threat of**

9   **great bodily harm** or other acts disclosing a high degree of

10  cruelty, viciousness, or callousness; [petitioner] **was armed**

11  **with or used a weapon at the time of the commission of the**

12  **crime**; the victim was particularly vulnerable; [petitioner]

13  **was convicted of another crime for which a consecutive**

14  **sentence could have been imposed but the court was electing**

15  **not to impose such a sentence**; the manner in which the crime

16  was carried out indicated planning, sophistication, or

17  professionalism; [petitioner] had engaged in violent conduct

18  which indicated a serious danger to society; and he **was on**

19  **probation or parole when the crime was committed.**  [¶]   The

20  court also commented that the fact that [petitioner] fled

21  after realizing he had inflicted a very serious injury upon

22  Jackson indicated a further degree of callousness.  The

23  court imposed the four-year upper term on count two, plus

24  three years pursuant to Penal Code section 12022.7,

25  subdivision (a).  [¶]   The court then stated, "And pursuant

26  to [the Penal Code section] 12022.5, subdivision (a)

27  [allegation, the court] also elects the high base term for

28  the following reasons:  [¶]   The [petitioner] has engaged in

9

1  violent conduct which indicates a serious danger to society;

2  **[¶]   The [petitioner] was on probation or parole when the**

3  **crime was committed.   [¶]   And the court incorporates by**

4  **this reference the other factors in aggravation previously**

5  **mentioned for the record."**   (Bracketed material added.)

6  [¶]   The court added, "To the extent that there would be any

7  argument that the court is using for more than one purpose

8  the factors in aggravation for enhancing the sentence, the

9  court points out that there are numerous factors in

10  aggravation any one of which in the court's opinion and

11  given the fact that there are no factors in mitigation that

12  the court could find justify the imposition of high term."

13  (*Sic.*)   [¶]   As to count two, the court sentenced

14  [petitioner] to prison for 17 years.   The court imposed

15  concurrent four-year upper terms on counts three and four,

16  and stated, "the court also by this reference in selecting

17  the high base term incorporate[s] the factors in aggravation

18  previously mentioned."   [Petitioner's] total sentence was 17

19  years in prison.

20

21  Lodgment D at 4-6 (emphasis added, footnote omitted).   The California

22  Court of Appeal then denied petitioner's *Blakely* claim, holding:

23

24  [Petitioner] claims imposition of upper terms on count two

25  and the firearm enhancement pertaining to that count

26  violates *Blakely*. . . .   We disagree.   [¶]   In *Blakely,* the

27  Supreme Court stated, "This case requires us to apply the

28  rule we expressed in *Apprendi* . . . : 'Other than the fact

10

1    of a prior conviction, any fact that increases the penalty

2    for a crime beyond the prescribed statutory maximum must be

3    submitted to a jury, and proved beyond a reasonable doubt.'"

4    The Supreme Court also stated, "Our precedents make clear,

5    however, that the 'statutory maximum' for *Apprendi* purposes

6    is the maximum sentence a judge may impose *solely on the*

7    *basis of the facts reflected in the jury verdict or admitted*

8    *by the defendant.*   In other words, the relevant 'statutory

9    maximum' is not the maximum sentence a judge may impose

10    after finding additional facts, but the maximum he may

11    impose *without* any additional findings."   [¶]   **During**

12    **sentencing, the court relied on the aggravating factor that**

13    **[petitioner] was on probation or parole when the crime was**

14    **committed.   This aggravating factor presupposed a prior**

15    **conviction; thus, the court, relying on the aggravating**

16    **factor, necessarily relied on the predicate prior**

17    **conviction.   In fact, during sentencing argument, the court**

18    **expressly referred to the prior conviction and the fact that**

19    **[petitioner] was on probation as a result of the prior**

20    **conviction.   The court observed that the prior conviction**

21    **was "so glaring it need not even be mentioned. . . ."**

22    **Accordingly, the upper terms on count two and the firearm**

23    **enhancement pertaining to that count were supported by a**

24    **factor, the fact of a prior conviction, that, under *Blakely*,**

25    **did not have to be found by a jury beyond a reasonable**

26    **doubt. . . .**

27

28  Lodgment D at 6-7 (citations and footnote omitted; emphasis in

original; bold emphasis added).

In Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the Supreme Court overturned a sentencing scheme that allowed a state court judge to enhance a defendant's penalty beyond the statutory maximum, concluding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S. Ct. at 2362-63 (emphasis added). Subsequently, in Blakely, the Supreme Court applied Apprendi and held unconstitutional a defendant's 90-month sentence for second-degree kidnapping with a firearm, which was a class B felony under Washington law, which provided that "[i]f no facts beyond those reflected in the jury's verdict were found by the trial judge, a defendant could not receive a sentence above a 'standard range' of 49 to 53 months." Cunningham, 127 S. Ct. at 864 (citing Blakely, 542 U.S. at 299-300, 124 S. Ct. at 2535). Washington law permitted, but did not require, a judge to exceed that standard range if it found "'substantial and compelling reasons justifying an exceptional sentence.'" Id. at 864-65 (citing Blakely, 542 U.S. at 299-300, 124 S. Ct. at 2535). Further, Washington law "set out a nonexhaustive list of aggravating facts on which such a sentence elevation could be based. It also clarified that a fact taken into account in fixing the standard range- i.e., any fact found by the jury -could under no circumstances count in the determination whether to impose an exceptional sentence." Id. at 865 (citing Blakely, 542 U.S. at 299-300, 124 S. Ct. at 2535). Under these circumstances, the Supreme Court concluded "the 'statutory maximum' for Apprendi purposes is the

1   maximum sentence a judge may impose *solely on the basis of the facts*
2   *reflected in the jury verdict or admitted by the defendant*." Id. at
3   303, 124 S. Ct. at 2537 (emphasis in original).  "In other words, the
4   relevant 'statutory maximum' is not the maximum sentence a judge may
5   impose after finding additional facts, but the maximum he may impose
6   *without* any additional findings." Id. at 303-04, 124 S. Ct. at 2537
7   (emphasis in original).

8

9       In United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160
10  L. Ed. 2d 621 (2005), the Supreme Court applied *Blakely* to determine
11  the Federal Sentencing Guidelines unconstitutional because they
12  required a trial court to enhance sentences based only on the judge's
13  determination of a fact that was not found by a jury or admitted by
14  the defendant.  Id. at 233-44, 125 S. Ct. at 749-56.  In so doing, the
15  Supreme Court stated:

16

17      If the Guidelines as currently written could be read as
18      merely advisory provisions that recommended, rather than
19      required, the selection of particular sentences in response
20      to differing sets of facts, their use would not implicate
21      the Sixth Amendment.  We have never doubted the authority of
22      a judge to exercise broad discretion in imposing a sentence
23      within a statutory range. . . .  For when a trial judge
24      exercises his discretion to select a specific sentence
25      within a defined range, the defendant has no right to a jury
26      determination of the facts that the judge deems relevant.

27

28  Id. at 233, 125 S. Ct. at 750.

13

1      Most recently, in *Cunningham*, the Supreme Court held California's

2  Determinate Sentencing Law ("DSL") violates a defendant's right to

3  trial by jury under the Sixth and Fourteenth Amendments by placing the

4  finding of facts to elevate a sentence within the judge's province.

5  <u>Cunningham</u>, 127 S. Ct. at 860, 871.   In reaching this decision, the

6  Supreme Court provided the following overview of California's DSL:

7

8        For most offenses, . . . the DSL regime is implemented in

9        the following manner.  The statute defining the offense

10      prescribes three precise terms of imprisonment – a lower,

11      middle, and upper term sentence.  Penal Code § 1170(b) . . .

12      controls the trial judge's choice; it provides that "the

13      court shall order imposition of the middle term, unless

14      there are circumstances in aggravation or mitigation of the

15      crime."  "[C]ircumstances in aggravation or mitigation" are

16      to be determined by the court after consideration of several

17      items: the trial record; the probation officer's report;

18      statements in aggravation or mitigation submitted by the

19      parties, the victim, or the victim's family; "and any

20      further evidence introduced at the sentencing hearing."   [¶]

21      The DSL directed the State's Judicial Council to adopt Rules

22      guiding the sentencing judge's decision whether to "[i]mpose

23      the lower or upper prison term."  Restating [P.C.] §

24      1170(b), the Council's Rules provide that "[t]he middle term

25      shall be selected unless imposition of the upper or lower

26      term is justified by circumstances in aggravation or

27      mitigation."  "Circumstances in aggravation[]" . . . means

28      "*facts* which justify the imposition of the upper prison

14

1    term."  Facts aggravating an offense, the Rules instruct,

2    "shall be established by a preponderance of the evidence,"

3    and must be "stated orally on the record."

4

5    Id. at 861-62 (citations and footnotes omitted).  The Supreme Court

6    noted "California's DSL, and the rules governing its application,

7    direct the sentencing court to start with the middle term, and to move

8    from that term only when the court itself finds and places on the

9    record facts – whether related to the offense or the offender – beyond

10   the elements of the charged offense."  Id. at 862.  The Supreme Court

11   then held that "[b]ecause circumstances in aggravation are found by

12   the judge, not the jury, and need only be established by a

13   preponderance of the evidence, not beyond a reasonable doubt, the DSL

14   violates Apprendi's bright-line rule: Except for a prior conviction,

15   'any fact that increases the penalty for a crime beyond the prescribed

16   statutory maximum must be submitted to a jury, and proved beyond a

17   reasonable doubt.'"   Id. at 868 (citations omitted).

18

19        **Teague Doctrine:**

20        As an initial matter, respondent contends in his answer that

21   applying Cunningham to petitioner's sentence, as petitioner desires,

22   would constitute a new procedural rule that, under Teague,[5] cannot be

23   used to grant petitioner habeas relief.  Answer at 6:17-12:7.

24

25        The Teague doctrine is a "nonretroactivity principle" that

26   "prevents a federal court from granting habeas corpus relief to a

27   _____

28        [5]   Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103
     L. Ed. 2d 334 (1989).

1 state prisoner based on a rule announced after his conviction and

2 sentence became final." Caspari v. Bohlen, 510 U.S. 383, 389, 114

3 S. Ct. 948, 953, 127 L. Ed. 2d 236 (1994); Horn v. Banks, 536 U.S.

4 266, 271, 122 S. Ct. 2147, 2150, 153 L. Ed. 2d 301 (2002) ("Banks I").

5 If the Teague doctrine is "properly raised by the state," a federal

6 court must conduct a threshold Teague analysis prior to considering

7 the merits of a petitioner's claim. Banks I, 536 U.S. at 272, 122

8 S. Ct. at 2151; Bohlen, 510 U.S. at 389, 114 S. Ct. at 953.

9

10      In the Teague context, "[a] new rule applies retroactively in a

11 collateral proceeding only if (1) the rule is substantive or (2) the

12 rule is a watershed rule of criminal procedure implicating the

13 fundamental fairness and accuracy of the criminal proceeding."

14 Whorton v. Bockting, __ U.S. __, 127 S. Ct. 1173, 1181, 167 L. Ed. 2d

15 1 (2007) (citations and internal brackets and quotation marks

16 omitted); Schriro v. Summerlin, 542 U.S. 348, 351-52, 124 S. Ct. 2519,

17 2522-23, 159 L. Ed. 2d 442 (2004). Thus, "[u]nder Teague, the

18 determination whether a constitutional rule of criminal procedure

19 applies to a case on collateral review involves a three-step process."

20 Beard v. Banks, 542 U.S. 406, 411, 124 S. Ct. 2504, 2510, 159

21 L. Ed. 2d 494 (2004) ("Banks II"); Bohlen, 510 U.S. at 390, 114 S. Ct.

22 at 953. "First, the court must determine when the defendant's

23 conviction became final." Banks II, 542 U.S. at 411, 124 S. Ct. at

24 2510; Bohlen, 510 U.S. at 390, 114 S. Ct. at 953. "Second, it must

25 ascertain the 'legal landscape as it then existed,' and ask whether

26 the Constitution, as interpreted by the precedent then existing,

27 compels the rule. . . . That is, the court must determine whether the

28 rule is actually 'new.'" Banks II, 542 U.S. at 411, 124 S. Ct. at

2510 (citations omitted); <u>Bohlen</u>, 510 U.S. at 390, 114 S. Ct. at 953. "Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions to nonretroactivity." <u>Banks II</u>, 542 U.S. at 411, 124 S. Ct. at 2510; <u>Bohlen</u>, 510 U.S. at 390, 114 S. Ct. at 953.

"State convictions are final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.'" <u>Banks II</u>, 542 U.S. at 411, 124 S. Ct. at 2510 (quoting <u>Bohlen</u>, 510 U.S. at 390, 114 S. Ct. at 953). Here, petitioner's conviction became final on November 15, 2005, ninety days after the California Supreme Court denied a petition for review. 28 U.S.C. § 2101(d); Rules of the Supreme Court of the United States, Rule 13. *Apprendi*, *Blakely*, and *Booker* were all decided before petitioner's conviction became final on November 15, 2005; however, *Cunningham* was decided afterward, on January 22, 2007.

This Court must next determine whether the holding in *Cunningham* embodies a "new rule" of constitutional law. Within the meaning of *Teague*, a holding constitutes a new rule "if it 'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not '*dictated* by precedent existing at the time the defendant's conviction became final.'" <u>Graham v. Collins</u>, 506 U.S. 461, 467, 113 S. Ct. 892, 897, 122 L. Ed. 2d 260 (1993) (quoting <u>Teague</u>, 489 U.S. at 301, 109 S. Ct. at 1070); <u>Butler v. McKellar</u>, 494 U.S. 407, 415, 110 S. Ct. 1212, 1217, 108 L. Ed. 2d 347 (1990). "The new rule principle

17

1  . . . validates reasonable, good-faith interpretations of existing

2  precedents made by state courts even though they are shown to be

3  contrary to later decisions." Bockting, 127 S. Ct. at 1181 (citations

4  and internal quotation marks omitted); Bohlen, 510 U.S. at 395-96, 114

5  S. Ct. at 956.

6

7      Here, this Court determines *Cunningham* constitutes a "new rule"

8  within the meaning of *Teague*. First, the holding in *Cunningham* is

9  similar to the holdings in *Apprendi*, *Blakely*, and *Booker*, each of

10  which announced a "new rule" for *Teague* purposes. See United States

11  v. Cruz, 423 F.3d 1119, 1120-21 (9th Cir. 2005) (per curiam) (*Booker*),

12  cert. denied, 546 U.S. 1155 (2006); Schardt v. Payne, 414 F.3d 1025,

13  1035-36 (9th Cir. 2005) (*Blakely*); Cooper-Smith v. Palmateer, 397 F.3d

14  1236, 1245-46 (9th Cir.) (*Apprendi*), cert. denied, 546 U.S. 944

15  (2005). Moreover, those district courts that have considered this

16  matter have uniformly determined *Cunningham* announced a new rule.

17  See, e.g., Fennen v. Nakayema, 494 F. Supp. 2d 1148, 1155-56 (E.D.

18  Cal. 2007); Jordan v. Evans, 2007 WL 2703118, *10-11 (S.D. Cal.);

19  Marquez v. Evans, 2007 WL 2406867, *8-9 (N.D. Cal.); see also State of

20  New Mexico v. Frawley, ___ N.M. ___, 172 P.3d 144, 157-58 (2007)

21  (concluding its decision applying *Cunningham* is a new procedural rule

22  that did not apply retroactively, stating "[o]ur holding today is

23  based on *Cunningham*, . . . which in turn is based on the *Apprendi-*

24  *Booker-Blakely* line of cases. Our research has not disclosed a case

25  where a court has given the *Apprendi-Booker-Blakely* line of cases

26  retroactive effect in habeas proceedings").

27

28      Second, in dissenting in *Cunningham*, it was not apparent to

18

1  Justices Alito, Kennedy and Breyer that the holding in *Cunningham* was

2  dictated by then-existing precedent.  <u>Bockting</u>, 127 S. Ct. at 1181;

3  <u>Beard II</u>, 542 U.S. at 416, 124 S. Ct. at 2513.  Specifically, the

4  dissenters opined California's DSL was "indistinguishable in any

5  constitutionally significant respect from the advisory Guidelines

6  scheme that the Court approved" in *Booker*, and noted that every court

7  of appeals to consider the issue post-*Booker* had held a district court

8  in sentencing may rely on facts the trial judge found by a

9  preponderance of the evidence.  <u>Cunningham</u>, 127 S. Ct. at 873-81 & n.4

10 (Alito, J. dissenting).  Thus, the dissenters concluded that "[u]nless

11 the Court is prepared to overrule the remedial decision in *Booker*, the

12 California sentencing scheme at issue in this case should be held to

13 be consistent with the Sixth Amendment."  <u>Id.</u>  These dissenting

14 opinions strongly suggest *Cunningham* set forth a "new rule."  <u>See</u>,

15 e.g., <u>Banks II</u>, 542 U.S. at 415-16, 124 S. Ct. at 2512-13 (opinions of

16 four dissenting justices demonstrate "reasonable jurists could have

17 concluded" an opinion announced a new rule.).

18

19     Next, when the California Supreme Court considered the DSL post-

20 *Blakely*, it noted "[t]he United States Supreme Court has not yet

21 addressed a system that is comparable" to California's, and concluded

22 the DSL "does not violate a defendant's right to a jury trial under

23 the principles set forth in *Apprendi*, *Blakely*, and *Booker*."  <u>People v.</u>

24 <u>Black</u>, 35 Cal. 4th 1238, 1249-54, 29 Cal. Rptr. 3d 740, 745-50 (2005),

25 <u>vacated</u> <u>by</u>, 127 S. Ct. 1210 (2007).  Similarly, the New Mexico Supreme

26 Court applied *Apprendi*, *Blakely*, and *Booker* to uphold its sentencing

27 scheme, which allowed the trial court to "alter the basic sentence

28 . . . upon a finding by the judge of any mitigating or aggravating

circumstances surrounding the offense or concerning the offender."
State of New Mexico v. Lopez, 138 N.M. 521, 528-35, 123 P.3d 754, 761-68 (2005), overruled by, Frawley, 172 P.3d at 157-58 (applying
*Cunningham*, overruling *Lopez*, and concluding New Mexico's sentencing
scheme is unconstitutional).


     In the third step, this Court must determine whether the
*Cunningham* rule comes within either of the two exceptions to the
*Teague* nonretroactivity doctrine: "First, the [*Teague*] bar does not
apply to [1] rules forbidding punishment 'of certain primary conduct
[or to] [2] rules prohibiting a certain category of punishment for a
class of defendants because of their status or offense.'"   Beard II,
542 U.S. at 416-17, 124 S. Ct. at 2513; Summerlin, 542 U.S. at 351-52,
124 S. Ct. at 2522-23.   The first exception is inapplicable to
*Cunningham*, which announced a procedural rule that does not affect who
or what type of conduct may be punished.   See Summerlin, 542 U.S. at
352-54, 124 S. Ct. at 2523-24 (A rule "requiring a jury rather than a
judge find the essential facts bearing on punishment" is a
"prototypical procedural rule[]" and such rules "do not produce a
class of persons convicted of conduct the law does not make criminal.
. . ."); Schardt, 414 F.3d at 1036 ("*Blakely* allocated some of the
decision-making authority previously held by judges to juries.   It is
therefore a procedural rule."  (citation omitted)).   "The second
exception is for watershed rules of criminal procedure implicating the
fundamental fairness and accuracy of the criminal proceeding[,]"
Beard II, 542 U.S. at 417, 124 S. Ct. at 2513; Bockting, 127 S. Ct. at
1181, and a change in the law requiring a jury to make the factual
findings on which an upper sentence is based, rather than a trial

1  judge, does not announce a watershed rule. <u>Summerlin</u>, 542 U.S. at

2  355-58, 124 S. Ct. at 2524-26; <u>Schardt</u>, 414 F.3d at 1036.   Thus,

3  *Cunningham* "announced a new procedural rule that does not apply

4  retroactively to cases already final on direct review."[6]   <u>Summerlin</u>,

5  542 U.S. at 358, 124 S. Ct. at 2526; <u>Schardt</u>, 414 F.3d at 1034-36;

6  <u>Fennen</u>, 494 F. Supp. 2d at 1155-56.

7

8     **Merits:**

9     Yet, this is not the end of the matter.   Rather, this Court must

10  consider petitioner's sentencing claim (Ground One) under *Blakely*,

11  which was decided before petitioner's judgment became final.   Under

12  *Blakely*, "the 'statutory maximum' for *Apprendi* purposes is the maximum

13  sentence a judge may impose *solely on the basis of the facts reflected*

14  *in the jury verdict or admitted by the defendant.*" <u>Id.</u> at 303, 124

15  S. Ct. at 2537 (emphasis in original).   Under California's DSL, the

16  middle term, not the upper term, is the relevant statutory maximum.

17  <u>Cunningham</u>, 127 S. Ct. at 868.   Nevertheless, "the existence of a

18  single aggravating circumstance is legally sufficient to make the

19  defendant eligible for the upper term." <u>People v. Black</u>, 41 Cal. 4th

20  799, 813, 62 Cal. Rptr. 3d 569, 579 (2007); <u>People v. Osband</u>, 13

21  Cal. 4th 622, 728, 55 Cal. Rptr. 2d 26, 95 (1996), <u>cert. denied</u>, 519

22  U.S. 1061 (1997).   "Therefore, if one aggravating circumstance has

23  been established in accordance with the constitutional requirements

24  _____

25     [6]  For AEDPA purposes, *Cunningham* is not a "clearly

26  established rule" because it is a new rule under *Teague*. <u>See</u>
   <u>Schardt</u>, 414 F.3d at 1037 ("We have held that if a case creates a

27  new rule under *Teague*, then it is not a clearly established rule
   under 28 U.S.C. § 2254(d)(1).");  <u>Himes v. Thompson</u>, 336 F.3d 848,

28  855 n.4 (9th Cir. 2003).

21

1  set forth in *Blakely*, the defendant is not 'legally entitled' to the

2  middle term sentence, and the upper term sentence is the 'statutory

3  maximum.'"   <u>Black</u>, 41 Cal. 4th at 813, 62 Cal. Rptr. 3d at 579; <u>Fuson</u>

4  <u>v. Tilton</u>, 2007 WL 2701201, *18 (S.D. Cal.).

5

6     Here, the trial court relied upon several factors in sentencing

7  petitioner to the upper term, including that petitioner was on

8  probation or parole at the time the crimes occurred, which as the

9  California Court of Appeal explained, presupposed a prior conviction –

10  in this case for carrying a concealed weapon.   <u>See</u> Reporter's

11  Transcript ("RT") 1504:23-1505:4, 1507:27-28; Lodgment D at 6.   Under

12  *Apprendi*, this factor is explicitly excepted from the requirement that

13  a jury consider facts that increase the penalty for a crime beyond the

14  statutory maximum, <u>Apprendi</u>, 530 U.S. at 490, 120 S. Ct. at 2362-63,

15  and it is sufficient to expose petitioner to sentencing within the

16  upper term, <u>Blakely</u>, 542 U.S. at 303-04, 124 S. Ct. at 2537; thus,

17  petitioner's sentence does not violate the Sixth Amendment.   <u>Jordan</u>,

18  2007 WL 2703118 at *11.   Additionally, the jury specifically found

19  petitioner inflicted great bodily harm on Jackson and petitioner was

20  armed with a weapon when committing the crime.   CT 280.   Each of these

21  factors is also sufficient to expose petitioner to sentencing within

22  the upper term.   <u>See</u> Cal. Rules of Court, Rule 4.421(a)(1-2) (2003)

23  (aggravating circumstances include that: "[t]he crime involved . . .

24  great bodily harm" and "[t]he defendant was armed with or used a

25  weapon at the time of the commission of the crime").   Similarly, the

26  jury also convicted petitioner of a second felony for which he could

27  have received a consecutive sentence, CT 281, and this factor, too,

28  was sufficient to expose petitioner to sentencing within the upper

1   term.  See Cal. Rules of Court, Rule 4.421(a)(7) (2003) ("The

2   defendant was convicted of other crimes for which consecutive

3   sentences could have been imposed but for which concurrent sentences

4   are being imposed.").  Since the jury established the foregoing

5   aggravating factors without any findings of fact by the trial court,

6   petitioner's upper term sentence does not violate the Sixth Amendment

7   for these reasons, as well.  Fuson, 2007 WL 2701201 at *18.

8

9        Thus, the California Supreme Court's denial of Ground One was

10  neither contrary to, nor an unreasonable application of, clearly

11  established federal law, as determined by the United States Supreme

12  Court.  28 U.S.C. § 2254(d).

13

14                              VI

15       Federal courts "will not review a question of federal law decided

16  by a state court if the decision of that court rests on a state law

17  ground that is independent of the federal question and adequate to

18  support the judgment."  Coleman v. Thompson, 501 U.S. 722, 729, 111

19  S. Ct. 2546, 2553, 115 L. Ed. 2d 640 (1991); Lee v. Kemna, 534 U.S.

20  362, 375, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002); King v.

21  Lamarque, 464 F.3d 963, 965 (9th Cir. 2006).  "[T]he procedural

22  default doctrine is a specific application of the general adequate and

23  independent state grounds doctrine."  Wells v. Maass, 28 F.3d 1005,

24  1008 (9th Cir. 1994); Fields v. Calderon, 125 F.3d 757, 761-62 (9th

25  Cir. 1997), cert. denied, 523 U.S. 1132 (1998).  The procedural

26  default doctrine "bar[s] federal habeas [review] when a state court

27  declined to address a prisoner's federal claims because the prisoner

28  had failed to meet a state procedural requirement."  Coleman, 501 U.S.

                                23

1   at 729-30, 111 S. Ct. at 2554; <u>Hanson v. Mahoney</u>, 433 F.3d 1107, 1113

2   (9th Cir.), <u>cert. denied</u>, 126 S. Ct. 2354 (2006). A state procedural

3   rule is considered an independent bar if it is not interwoven with

4   federal law or dependent upon a federal constitutional ruling. <u>Ake v.</u>

5   <u>Oklahoma</u>, 470 U.S. 68, 75, 105 S. Ct. 1087, 1092, 84 L. Ed. 2d 53

6   (1985); <u>Michigan v. Long</u>, 463 U.S. 1032, 1040-41, 103 S. Ct. 3469,

7   3476, 77 L. Ed. 2d 1201 (1983); <u>LaCrosse v. Kernan</u>, 244 F.3d 702, 704

8   (9th Cir. 2001). A state procedural rule constitutes an adequate bar

9   to federal court review if it was "firmly established and regularly

10   followed" at the time it was applied by the state court. <u>Ford v.</u>

11   <u>Georgia</u>, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857, 112 L. Ed. 2d 935

12   (1991); <u>King</u>, 464 F.3d at 965. "A state ground is independent and

13   adequate only if the last state court to which the petitioner

14   presented the claim 'actually relied' on a state rule that was

15   sufficient to justify the decision." <u>Carter v. Giurbino</u>, 385 F.3d

16   1194, 1197 (9th Cir. 2004), <u>cert. denied</u>, 543 U.S. 1190 (2005);

17   <u>Koerner v. Grigas</u>, 328 F.3d 1039, 1049-50 (9th Cir. 2003).

18

19       Procedural default is an affirmative defense, <u>Gray v. Netherland</u>,

20   518 U.S. 152, 165-66, 116 S. Ct. 2074, 2082, 135 L. Ed. 2d 457 (1996);

21   <u>Insyxiengmay v. Morgan</u>, 403 F.3d 657, 665 (9th Cir. 2005), and the

22   burden is on the respondent to establish its applicability.

23   <u>Insyxiengmay</u>, 403 F.3d at 665-66; <u>Bennett v. Mueller</u>, 322 F.3d 573,

24   585-86 (9th Cir.), <u>cert. denied</u>, 540 U.S. 938 (2003). However,

25

26         [o]nce the state has adequately pled the existence of an

27         independent and adequate state procedural ground as an

28         affirmative defense, the burden to place that defense in

1     issue shifts to the petitioner.  The petitioner may satisfy

2     this burden by asserting specific factual allegations that

3     demonstrate the inadequacy of the state procedure, including

4     citation to authority demonstrating inconsistent application

5     of the rule.  Once having done so, . . . it is the State who

6     must bear the burden of demonstrating that the bar is

7     applicable.

8

9  Bennett, 322 F.3d at 586; King, 464 F.3d at 966-67.

10

11     The respondent contends petitioner has procedurally defaulted

12  Ground Two by failing to contemporaneously object on confrontation

13  grounds in the trial court.  Answer at 19:14-21:18.  "To determine

14  whether [petitioner's] claim [is] procedurally barred, [the Court]

15  look[s] to the California Court of Appeal's opinion because it is the

16  last reasoned state court opinion."  Vansickel v. White, 166 F.3d 953,

17  957 (9th Cir.), cert. denied, 528 U.S. 965 (1999); Nunnemaker, 501

18  U.S. at 803, 111 S. Ct. at 2594.  Here, the California Court of Appeal

19  determined petitioner had waived Ground Two, his confrontation clause

20  claim, because he did not raise it before the trial court.  Lodgment D

21  at 9.  Before making this determination, however, the California Court

22  of Appeal set forth the following facts and procedural history

23  underlying petitioner's confrontation clause claim:

24

25     After the jury was sworn, the court and parties discussed

26     the admissibility of a 911 tape proffered by the prosecutor.

27     The prosecutor represented as follows.  The tape was made by

28     a "percipient witness" "to the event who calls 911 and he

25

reports that a woman has just been shot, giving a brief
description, says he's following this person and is
reporting what's happening as it's occurring and that's all
recorded on the 911 call." The caller's statements were
admissible under the hearsay exceptions for excitable
utterances and spontaneous statements. The caller's voice
was excited. It was "not like it's screaming, but it does
appear that he's out of breath and more in tune[] of what's
happening and reporting what's happening as opposed to
listening to the operator. . . ." (*Sic.*) The prosecutor did
not know whether police talked with the caller on the day of
the call. Attempts to secure the caller's attendance in
court had been unsuccessful. [¶] **[Petitioner] objected**
**that the tape was hearsay. [Petitioner] did not object that**
**introduction of the tape into evidence violated his right to**
**confrontation.** The parties submitted the matter and the
court ruled the tape was admissible. [¶] Following opening
statements, Katherine Kravitz, a Los Angeles Police
Department police service representative, testified as
follows. Kravitz was commonly known as a "911 dispatcher
with L.A.P.D." She took emergency and nonemergency calls
from the public and assigned the matters to officers.
Kravitz sometimes spoke with other agencies while she was
speaking with the caller. The "fire department [was]
probably the biggest one," and sometimes sheriffs. [¶] The
tape was played to the jury, and a transcript of the tape
was admitted in evidence and given to the jury. The
transcript reflects that an emergency operator, unidentified

voices, and paramedics participated in the call.  Kravitz
testified she was the emergency operator.  One voice was
later identified in the transcript as the voice of Carter.
Carter's statements are reflected in the Factual Summary,
*ante*.  The operator told Carter that she would connect him
with paramedics and he should tell them where the victim
was.  Carter did so.  Kravitz testified she was coordinating
with the fire department.  [¶]  During jury argument,
[petitioner's] counsel urged, "I'm not going to sit up here
and destroy what little credibility I may have with you by
arguing that he didn't do it. . . .  I'm not going to argue
to you that there was some second person that came with my
[client] and went the opposite direction . . . while
everybody else was chasing my client down the street."
[Petitioner's] counsel, referring to Galindo and Pena,
urged, "We have two people [with] no ax to grind pointing my
client out.  So I'm going to concede."  [¶]  [Petitioner's]
counsel urged that the "crux" of his jury argument was that,
two days after the incident, Jackson told police that
"[petitioner] hit her in the side of the head with the gun.
And it went off."  [Petitioner's] counsel then urged, "That
is what happened, folks."  [Petitioner's] counsel later
urged, "My client was pistol whipping Ms. Jackson.  My
client . . . intended to pistol whip Ms. Jackson, but he did
not intend to shoot her.  You don't get that kind of an
injury if you're intending to shoot and kill somebody.  You
get a through and through.  [¶]  Folks, that's it.  In a
nutshell.  That is it."

27

1  Lodgment D at 7-9 (emphasis added); see also RT at 309:21-311:17.

2  Based on these facts, the California Court of Appeal determined

3  petitioner waived any claim under the confrontation clause, stating:

4

5      [Petitioner] waived the issue of whether introduction of the

6      tape into evidence violated his right to confrontation,

7      since he failed to object below on that ground.   [¶]

8      Moreover, even if the issue were preserved for review, to

9      the extent [petitioner] claims *Crawford v. Washington* (2004)

10     541 U.S. 36 [158 L. Ed. 2d 177] (*Crawford*), mandates

11     exclusion of Carter's statements, we reject the claim.[FN3]

12     Carter, not the police, initiated the 911 call to obtain

13     assistance.  Kravitz was determining the appropriate

14     response, not conducting a police interrogation in

15     contemplation of future prosecution.  Carter made his

16     statements as a citizen and, due to the stress of

17     excitement, his statements were without reflection or

18     deliberation.  Therefore, *Crawford,* which applies only to

19     testimonial statements, is inapplicable in this case.

20

21         [FN3]   Respondent does not dispute Carter's

22         unavailability or the absence of an opportunity for

23         cross-examination of Carter.

24

25     [¶]   Finally, there is no dispute that the 911 tape was

26     relevant to the issues of whether Jackson was assaulted with

27     a firearm, whether someone, at that time, carried a loaded

28     firearm, and whether [petitioner] was the person who

1    committed those crimes.  However, there was ample direct and

2    circumstantial evidence from Jackson, Galindo, and Pena that

3    [petitioner] shot Jackson.  [Petitioner's] jury argument was

4    that he hit Jackson with a gun but it accidentally

5    discharged, that is, he in effect conceded the issues to

6    which the 911 tape was relevant.  Any violation of

7    [petitioner's] right to confrontation was not prejudicial

8    under any conceivable standard.  (Cf. *People v. Harrison*

9    (2005) 35 Cal. 4th 208, 239-240; *People v. Watson* (1956) 46

10   Cal. 2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18,

11   24 [17 L. Ed. 2d 705.)

12

13   Lodgment D at 9 (some citations omitted).

14

15       In denying Ground Two based on petitioner's failure to raise a

16   contemporaneous confrontation clause objection at trial, the

17   California Court of Appeal relied on a state procedural doctrine that

18   was not interwoven with or dependent on federal law, Ake, 470 U.S. at

19   75, 105 S. Ct. at 1092; Long, 463 U.S. at 1040-41, 103 S. Ct. at 3476;

20   LaCrosse, 244 F.3d at 704, and which was a "firmly established and

21   regularly followed state practice" prior to petitioner's trial.[7]  See

22   _____

23       [7]  The fact that the California Court of Appeal alternately
     decided this claim on the merits does not prevent this claim from
24   being procedurally barred in federal court.  See Harris v. Reed,
     489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10, 103 L. Ed. 2d
25   308 (1989) ("[A] state court need not fear reaching the merits of
     a federal claim in an alternate holding.  By its very definition,
26   the adequate and independent state ground doctrine requires the
     federal court to honor a state holding that is a sufficient basis
27   for the state court's judgment, even when the state court also
     relies on federal law."); Bargas v. Burns, 179 F.3d 1207, 1214

28

1  People v. Alvarez, 14 Cal. 4th 155, 186, 58 Cal. Rptr. 2d 385, 403

2  (1996) ("It is, of course, the general rule . . . that questions

3  relating to the admissibility of evidence will not be reviewed on

4  appeal in the absence of a specific and timely objection in the trial

5  court on the ground sought to be urged on appeal." (citations and

6  internal quotation marks omitted)), cert. denied, 522 U.S. 829 (1997);

7  People v. Pinholster, 1 Cal. 4th 865, 935, 4 Cal. Rptr. 2d 765, 798

8  (1992) (same), cert. denied, 506 U.S. 921 (1992).  Since respondent

9  has raised the defense of an independent and adequate state procedural

10  rule, Paulino v. Castro, 371 F.3d 1083, 1093 (9th Cir. 2004), the

11  burden shifts to petitioner "to place that defense in issue."  King,

12  464 F.3d at 966-67; Bennett, 322 F.3d at 586.  Here, petitioner has

13  not done so;[8] therefore, petitioner has procedurally defaulted Ground

14

---

15  (9th Cir. 1999) ("The state court concluded that petitioner

16  procedurally defaulted - a state ground - and alternatively
   rejected petitioner's claim on the merits - a constitutional

17  ground.  The alternative federal law holding of the court in no

18  way disturbs the independent state law ground for dismissal."),
   cert. denied, 529 U.S. 1073 (2000).

19
       [8]  The petitioner does not challenge either the adequacy or

20  the independence of the contemporaneous objection rule.  Instead,
   petitioner attacks the California Court of Appeal's determination

21  of waiver, arguing Crawford was not decided until after his trial

22  and, in any event, the prosecution raised a confrontation clause
   issue in its own briefing.  See Petition, Attachment at 13.

23  However, in addressing petitioner's habeas corpus petition, this
   Court cannot consider whether the California Court of Appeal

24  properly invoked the contemporaneous objection bar.  Estelle v.

25  McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480, 116 L. Ed. 2d
   385 (1991); see also Poland v. Stewart, 169 F.3d 573, 584 (9th

26  Cir.) ("Federal habeas courts lack jurisdiction . . . to review
   state court applications of state procedural rules."), cert.

27  denied, 528 U.S. 845 (1999).  Thus, petitioner has not rebutted
   respondent's affirmative defense that he procedurally defaulted

28  Ground Two.

1  Two.

2

3      When a state prisoner "has defaulted his federal claims in state

4  court pursuant to an independent and adequate state procedural rule,

5  federal habeas review of the claims is barred unless the prisoner can

6  demonstrate cause for the default and actual prejudice as a result of

7  the alleged violation of federal law, or demonstrate that failure to

8  consider the claims will result in a fundamental miscarriage of

9  justice." Coleman, 501 U.S. at 750, 111 S. Ct. at 2565; Hanson, 433

10  F.3d at 1114.  Here, petitioner has not raised cause and prejudice for

11  the procedural default and he does not claim the failure to consider

12  Ground Two will result in a fundamental miscarriage of justice;

13  therefore, Ground Two is procedurally defaulted.  Paulino, 371 F.3d at

14  1093.

15

16                                    VII

17      In Ground Three, petitioner attacks the trial court's imposition

18  of a restitution order.  However, in an analogous situation, federal

19  courts have consistently held a federal inmate cannot challenge a

20  restitution order under 28 U.S.C. § 2255 because the order does not

21  affect the duration of the inmate's custody.  See, e.g., United States

22  v. Thiele, 314 F.3d 399, 400 (9th Cir. 2002) ("Claims for other types

23  of relief, such as relief from a restitution order, cannot be brought

24  in a § 2255 motion, whether or not the motion also contains cognizable

25  claims for release from custody."), cert. denied, 540 U.S. 839 (2003);

26  United States v. Kramer, 195 F.3d 1129, 1130 (9th Cir. 1999)("[B]y its

27  plain terms, § 2255 is available only to defendants who are in custody

28  and claiming the right to be released.").  Thus, Ground Three is not a

cognizable federal habeas claim, and couching it as a due process

claim does not avail petitioner.  See also Thiele, 314 F.3d at 402

("Nor does it matter that Thiele couched his restitution claim in

terms of ineffective assistance of counsel."); Langford v. Day, 110

F.3d 1380, 1389 (9th Cir. 1996)(habeas petitioner may not "transform a

state-law issue into a federal one merely by asserting a violation of

due process"), cert. denied, 522 U.S. 881 (1997).


### RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving

and adopting this Amended Report and Recommendation; (2) adopting the

Amended Report and Recommendation as the findings of facts and

conclusions of law herein; and (3) directing that Judgment be entered

denying the petition and dismissing the action with prejudice.


DATE: _January 11, 2008_    **ROSALYN M. CHAPMAN**
_____
ROSALYN M. CHAPMAN
UNITED STATES MAGISTRATE JUDGE

R&R\06-4299.R&R2
1/11/08

32